**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

JAMAL JONES, *et al.*,                    )
                                          )
                    Plaintiffs,           )
                                          )        Cause No. 2:14-CV-362-PPS-JEM
            vs.                           )
                                          )
CITY OF HAMMOND, *et al.*,                )
                                          )
                    Defendants.           )

**OPINION AND ORDER**

Pro se Plaintiffs, Jamal Jones, Lisa Mahone, Joseph Ivy, Jr. (a minor), and Janiya

Ivy (a minor)[1], have brought excessive force claims, a *Monell* claim against the City of

Hammond, and a false arrest claim on behalf of only Jamal Jones - all stemming from a

traffic stop of Plaintiffs' vehicle way back on September 24, 2014. Defendant City of

Hammond, Patrick Vicari, Charles Turner, and Other Unknown Officers have moved to

dismiss the section 1983 excessive force claims of Plaintiffs Lisa Mahone, Joseph Ivy, Jr.,

and Janiya Ivy (collectively the "Mahone Plaintiffs"), as well as dismiss the Mahone

Plaintiffs' *Monell* claim, and dismiss all of the Plaintiffs' claims against the unknown

officers. [DE 136.] For the reasons articulated below, Defendants' motion to dismiss [DE

136] is granted in part and denied in part. Essentially, it is granted as to the claims of

---

[1] The minor names were disclosed in the first complaint (although it is sealed), and appear on the docket. [DE 1.] However, the operative second amended complaint now uses one minor's initials (J.I.) [DE 134]. Nevertheless, Defendants refer to the full names of the minors in their memorandum in support of the motion to dismiss. [DE 137 at 1.] For clarity sake, and because the minor names have already been disclosed, I will refer to their full names in this opinion.

Lisa Mahone, Joseph Ivy, Jr., and Janiya Ivy for excessive force in violation of the

Fourteenth Amendment in Count, and as to the claims against the unknown officers

(which will be dismissed without prejudice, and leave may be granted to file a third

amended complaint when and if they are identified through discovery), but the motion

to dismiss is otherwise denied because the Mahone Plaintiffs have stated a proper

excessive force claim under the Fourth Amendment and a proper *Monell* claim against

the City of Hammond.

## Background

This case was originally filed way back on October 6, 2014. [DE 1.] Due to a state

misdemeanor charge of resisting law enforcement and refusing to aid an officer against

Defendant Jones, this case was stayed for years pursuant to the *Younger* abstention

doctrine. [DE 9, 15.] During that passage of time, the parties continued to file status

reports, keeping the court abreast of the criminal case against Jamal Jones. For reasons

that are entirely lost on me, the state criminal case took *eleven years* to finally make its

way to trial, which occurred on May 6-7, 2025. Jones was convicted and sentenced on

June 30, 2025. [DE 113 at 1.] Magistrate Judge John E. Martin lifted the stay in this case

on July 8, 2025. [DE 114.] Just a short time later, Plaintiffs' counsel withdrew from the

case. [DE 128, 129.] Therefore, Plaintiffs are now pro se.

The following are the facts as they are described in the second amended

complaint, which I will accept as true for present purposes.

On September 24, 2014, at around 3:30 p.m., all of the Plaintiffs were traveling in

2

a vehicle in the area of 169th Street and Cline Avenue in Hammond. [DE 134 at 3.] Lisa Mahone was the driver, Jamal Jones was seated in the front passenger seat, and the two minor children (Joseph Ivy, Jr. and Janiya Ivy) were seated in the rear passenger seats. *Id.* Lisa Mahone is the mother of the two children. [*Id.* at 2.]

Defendants Patrick Vicari and Charles Turner are police officers employed by the City of Hammond and were on duty, in uniform. [*Id.* at 3.] They activated their emergency equipment and pulled Plaintiffs' vehicle over to the side of the road. *Id.*

Plaintiffs claim the manner in which Vicari and Turner pulled over their vehicle was "highly aggressive" and put them "in fear for their safety." *Id.* When the officers approached the car, they put "spike strips" under the wheels, which made Plaintiffs more scared. *Id.* They asked for Lisa's identification, and she gave it to them. *Id.* Officers Vicari and Turner told her they pulled her car over because she was not wearing her seatbelt. [*Id.* at 4.] Lisa conceded she was not wearing her seatbelt because it was broken and asked Vicari and Turner to issue her a ticket quickly because her mother was dying and they were on the way to the hospital to see her before she died. *Id.*

Rather than issuing Lisa a ticket for failure to wear her seatbelt, the officers demanded Jamal Jones (the passenger) provide his identification too. *Id.* Jones told them he did not have his driver's license, but had a ticket (which was previously issued to him after a different traffic stop) with his information on it. *Id.* The officers were being aggressive and ordered Jones to get out of the vehicle. *Id.* Jones again offered to

3

show them the ticket, but they refused. [*Id.* at 5.] Lisa called 911 and requested a supervisor, and Jones refused to get out of the vehicle because he feared for his safety. *Id.* Jones retrieved the ticket from his backpack, and offered it to the officers, but they declined to take the ticket and became more demanding. *Id.* The officers then drew their weapons. *Id.*

At this point, the car passengers were probably wondering what was going on. According to the second amended complaint, the officers did not tell anyone they were under arrest, or under suspicion for committing a crime, and they did not order anyone to put their hands in the air. *Id.* They again ordered Jones to exit the vehicle, which he believed was baseless, so he declined. *Id.*

Things began to escalate fast. The officers decided to forcibly remove Jones from the car. [*Id.* at 6.] Vicari, Turner, or one of the other unknown officers used a tool to aggressively smash the front passenger window, striking Jones in the right shoulder and causing shards of glass to strike Jamal Jones, Lisa, and the kids. *Id.* Then one of the officers shot Jones with a taser and the officers then collectively dragged Jones out of the vehicle and threw him to the ground. *Id.* They continued to tase Jones while he lay on the ground, but he was not resisting in any way. The officers then put Jones in handcuffs and placed him under arrest. *Id.* From Jones' standpoint, at no point during the encounter did he physically resist the officers in any way. *Id.*

Ultimately, Jones was charged with resisting law enforcement. [*Id.* at 7.] And Lisa was cited for failure to wear a seatbelt and then allowed to leave the scene. *Id.*

Plaintiffs claim that Vicari and Turner have a history of using objectively unreasonable force against citizens and arresting people without probable cause. *Id.* Vicari has been named as a defendant in at least three previous lawsuits involving excessive force, and Turner has been named as a defendant in at least one such case. *Id*. Despite this, Plaintiffs allege the City of Hammond has not disciplined Vicari or Turner, but instead they have been promoted to leadership positions. *Id.*

The second amended complaint states three claims: Count I is against the individual officers for violation of the Fourth Amendment's protection against excessive force; Count II is a *Monell* claim against the City of Hammond for having a policy and practice that condones excessive force; and Count III is only on behalf of Plaintiff Jamal Jones and states a *Monell* claim for false arrest against the City of Hammond, alleging Jones was arrested pursuant to a policy and practice. [*Id.* at 8-11.] Plaintiffs request compensatory damages, punitive damages, and attorneys' fees and costs.

The motion to dismiss filed by all Defendants requests dismissal of the excessive force claims of the Mahone Plaintiffs, dismissal of the Mahone Plaintiffs' *Monell* claim, and asks for dismissal of all Plaintiffs' claims against the unknown officers.

### Discussion

Under Federal Rule of Civil Procedure 8(a), Plaintiffs' complaint is required to contain "a short and plain statement showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if

5

the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  At this stage, I accept the second amended complaint's allegations as true and

draw all reasonable inferences in Plaintiffs' favor. *Bradley Hotel Corp. v. Aspen Specialty*

*Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021).  However, to avoid dismissal under Rule

12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690

(7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility requires a plaintiff to plead sufficient "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469

(7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Seventh Circuit

has explained that a plaintiff must plead facts that "suggest a right to relief that is

beyond the speculative level," which requires alleging "enough details about the

subject-matter of the case to present a story that holds together."  *Sevugan v. Direct*

*Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d

400, 404 (7th Cir. 2010).  "[S]heer speculation, bald assertions, and unsupported

conclusory statements" in the complaint fail to meet this burden.  *Taha*, 947 F.3d at 469.

Additionally, I am aware of the Supreme Court's admonition that a document

"filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and internal

citations omitted).  But while courts must give liberal construction to a *pro se* plaintiff's

6

complaint, "it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

Let's turn to the allegations of the Mahone Plaintiffs for excessive force. The second amended complaint indicates this claim is brought on behalf of all Plaintiffs (but remember Defendants have moved to dismiss only the claims of the Mahone Plaintiffs) pursuant to the Fourth and Fourteenth Amendments. [DE 134 at 8-9.]

I'll start with the claims falling under the Fourth Amendment first. All claims that a law enforcement officer has used excessive force in the course of an arrest or seizure should be analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Of course in this case, only Jones was arrested. So I need to consider whether the Mahone Plaintiffs were "seized" because a Fourth Amendment excessive force claim requires proof that a "seizure occurred and that the . . . seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023) (citing *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010); *see also Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999) ("Excessive force claims . . . resulting from a seizure are analyzed under the Fourth Amendment's objective reasonableness standard.").

So the first question under the Fourth Amendment analysis is whether the Mahone Plaintiffs were "seized." Clearly the Officers were only interested in Jones, but that doesn't mean that the other passengers in the car were not seized for some period of time too.

7

"A seizure requires the use of force with intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 317 (2021). Accidental force is not enough, nor is "force intentionally applied for some other purpose." *Id.* Moreover, the inquiry is whether the challenged conduct objectively manifests an intent to restrain. *Id.* The seizure does not depend on the subjective perceptions of the seized person. *Id.*

In this case, the allegations show that the Officers intended to seize Jamal Jones and ultimately arrested him. They ordered him out of the car repeatedly and then used a tool to smash the passenger window (where he was seated) and manually extract him from the vehicle. The Mahone Plaintiffs were bystanders to all of this and witnessed it. Defendants insist there was no seizure as to the Mahone Defendants. [DE 137 at 5-7.] But is it fair to say they were also "seized" because their car was pulled over, and a spike strip was placed by the wheels so the driver could not drive away? I think so.

The officers did "*objectively* manifest an intent to restrain" them, at least for the duration of the traffic stop. *Torres*, 592 U.S. at 317 (emphasis in original). As the Court in *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) articulated, a lawful roadside stop begins when a vehicle is pulled over for investigation of the traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. *Id.* As stated in *Brendlin*, a traffic stop of a car communicates to a reasonable passenger that she is not free to leave or terminate the encounter with the police, or move about with

8

free will. *Brendlin v. California*, 551 U.S. 249, 257 (2007) (finding for a traffic stop that "in these circumstances any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission.").

It seems evident from the allegations that Lisa Mahone and the children in the back seat must have felt they were not free to leave during this encounter. Plaintiffs allege the car was pulled over in a "highly aggressive" manner, and they feared for their safety and felt in imminent danger. [DE 134 at 3-4.] Additionally, there was a spike strip placed by the wheels of their car. Finally, Lisa requested that she be given a ticket quickly so they could get to the hospital to see her dying mother, but the officers did not accede this request. [*Id.* at 4.] The officers then started to get aggressive and order Jones out of the car, they drew their weapons, and then smashed his drivers side window. For all intents and purposes, the Mahone Plaintiffs were seized during this time.

For these reasons, there are sufficient allegations to show that the officers seized the Mahone Plaintiffs within the meaning of the Fourth Amendment. So the next question is whether the officers used objectively reasonable force. At this early stage in the proceedings, before discovery has taken place, it is difficult to answer this question. Defendants cite *McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002), for the proposition that motorists pulled over and arrested at gunpoint for not paying parking tickets were not subjected to excessive force, but that case was decided under a completely different

procedural posture. [DE 137 at 9.] *Coffey* went to trial, then the judge set aside the verdict on qualified immunity grounds, the Court of Appeals reversed, the Supreme Court granted certiorari remanding the case for reconsideration, and then the Seventh Circuit held the officer was entitled to qualified immunity for liability. *Coffey*, which went through every stage of litigation possible, proves my point—that dismissal is not appropriate at this point of the case.

In determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment, courts must direct "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396-97; *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Upon viewing the Mahone Plaintiffs' allegations in the light most favorable to them, I find that the second amended complaint satisfies the pleading standard with respect to the seizure's unreasonableness. Therefore, I conclude the Mahone Plaintiffs have sufficiently set forth the requisite elements of a cause of action for excessive force under the Fourth Amendment.

To the extent the Mahone Plaintiffs also seek recourse under the Fourteenth Amendment, generally, they may seek relief under the substantive due process guarantee of the Fourteenth Amendment. *See Schaefer v. Goch*, 153 F.3d 793, 797 (7th Cir. 1998). But they must prove a higher standard, that the officers' conduct "shocks the

10

conscience." *Id.* Intent or purpose to harm is generally required to satisfy the shocks-the conscience requirement. *Id.* at 798. The inquiry into whether the conduct shocks the conscience is stringent and satisfied by "only the most egregious official conduct." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *see also Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) (requiring the most egregious official conduct). Nothing in the allegations suggest the officers intended to harm Lisa Mahone or the children in the back of the car, and shattering the passenger window to remove Jamal Jones does not seem that shocking in the grand scheme of things, so I don't think the Mahone Plaintiffs have properly alleged that the officers' conduct "shocks the conscience." *Id.; see also Earley v. City of Chicago*, Case No. 23 C 801, 2024 WL 774863, at *5-6 (N.D. Ill. Feb. 26, 2024) (granting motion to dismiss as to claims under the Fourteenth Amendment where the conduct could not have shocked the conscience because there were no allegations the officers intended to cause harm); *Mathewson v. City of Lafayette Ind.*, 2012 WL 1957816, at *3 (N.D. Ind. May 30, 2012) (granting motion to dismiss a claim of violation of the Fourteenth Amendment rights where there was no allegation of an intent to harm). Therefore, any claims the Mahone Plaintiffs have under the Fourteenth Amendment in Count I will be dismissed.

The Mahone Plaintiffs have also stated a *Monell* claim against the City of Hammond, alleging its policy, practice, and procedure caused their constitutional injury. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). [DE 134 at 9-10.] Defendants argue because the Mahone Plaintiffs have no cognizable

claim against the officers, they have no *Monell* claim against the City of Hammond. [DE 137 at 9-11.]  But of course, I have found that the Mahone Plaintiffs do have a viable excessive force claim under the Fourth Amendment.  And the second amended complaint lists specific facts relevant to the *Monell* claims against the City of Hammond, included articulating three previous lawsuits in which Defendant Vicari was named as a defendant involving the use of excessive force, and one previous lawsuit in which Defendant Turner was named as a defendant in a case involving the use of excessive force. [DE 134 at 7-8.] The Mahone Plaintiffs allege despite this history, the City of Hammond has not disciplined Vicari or Turner, or other officers with these issues, and has instead promoted them to leadership positions within the police department. [*Id.* at 8.]  Moreover, they allege Hammond has failed to adequately investigate allegations of officer misconduct, failed to adequately discipline them, and failed to adequately train its officers on the proper use of force.  *Id.*  At this early dismissal stage, these pleadings are sufficient to state a claim against the City of Hammond.

Finally, Defendants move to dismiss the "unknown officers." [DE 137 at 11-12.] In response, the Mahone Plaintiffs argue these claims should not be dismissed yet, at the pleading stage, "where Plaintiffs have not yet had an opportunity to conduct discovery to ascertain their identities." [DE 140 at 2.] However, it is inappropriate to have unknown officers in the case at this point.  *See Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) ("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R.

Civ. P. 15, nor can it otherwise help the plaintiff.").  As this case goes forward to discovery and individuals get identified, Plaintiffs may move to amend the complaint again to name the new party.  But to name them now as "unknown officers" serves no useful purpose.  *See, e.g., Rodriguez v. ATF UC 3749*, No. 3:18-cv-899-JD-MGG, 2020 WL 363911, at *2 (N.D. Ind. Jan. 22, 2020) ("as a practical matter, [plaintiff] cannot proceed against these unnamed defendants. Furthermore . . . [plaintiff] has not described what these defendants did or the actions they took that he considers to be unconstitutional. Therefore, he cannot proceed against these defendants.").  So the claims against the unknown officers will be dismissed, and leave may be granted to file a third amended complaint when and if they are identified through discovery.

### Conclusion

Defendant City of Hammond, Patrick Vicari, Charles Turner, and Other Unknown Officers' Motion to Dismiss [DE 136] is GRANTED IN PART and DENIED IN PART.  It is GRANTED only: (1) to the claims of Lisa Mahone, Joseph Ivy, Jr., and Janiya Ivy for excessive force in violation of the Fourteenth Amendment in Count I, which are DISMISSED WITH PREJUDICE; and (2) as to all Plaintiffs' claims against the unknown officers which will be dismissed WITHOUT PREJUDICE, and leave may be granted to file a third amended complaint when and if they are identified through discovery.

However, the motion to dismiss [DE 136] is DENIED in all other respects.  Count I remains pending as to the claims of excessive force in violation of the Fourth Amendment as to the Mahone Plaintiffs, and Count I remains pending as to Plaintiff

13

Jamal Jones as to all respects (because the Defendants did not move to dismiss any claims of Jamal Jones).  Count II against the City of Hammond for a *Monell* violation also remains pending as to all Plaintiffs.  Count III for false arrest on behalf of Plaintiff Jamal Jones also remains pending (because Defendants did not move to dismiss any claims of Jamal Jones).

ENTERED: April 7, 2026.

      /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT